# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

DENIS TASLIDZIC, an individual, and
TITANS PROTECTIVE COATINGS, LLC,
a Florida limited liability company,

        *Plaintiffs,*

vs.

PETER LUTHER, an individual, and
PRIME TECH COATINGS, INC., a Florida
corporation,

        *Defendants*.

**CASE NO:  9:18-cv-80038**

## COMPLAINT

Plaintiffs Denis Taslidzic and Titans Protective Coatings, LLC (collectively "Plaintiffs"), by and through undersigned counsel, file this Complaint against Defendants Peter Luther and Prime Tech Coatings, Inc. (collectively "Defendants"), and state as follows:

## INTRODUCTION

1.      This is an unfair competition case arising in the industrial coating services market. Plaintiff Denis Taslidzic worked for a company called Prime Tech for about four years. He never signed an employment agreement and never had a non-compete.

2.      In January 2016, Taslidzic advised Prime Tech's owner, Peter Luther, that he planned to resign in one month and start his own competing business. Prime Tech was not prepared for Taslidzic's departure. Taslidzic had introduced Prime Tech to new markets. Taslidzic had single-handedly created the Company's bids for key projects. In short, Taslidzic was making Prime Tech money.

3. Fearing a loss of business, and fearing the threat of fair competition by Taslidzic's new company, Titans, Prime Tech launched a methodical campaign to destroy Plaintiffs' reputations and destroy their business by widely circulating falsehoods about Titans and Taslidzic.

4. Defendants advised both customers and vendors throughout the industry that Taslidzic and Titans were criminals; that they had stolen trade secrets and customer lists; that Plaintiffs' business was built using stolen information and that any companies doing business with them would be dragged into a lawsuit and subject to liability.

5. Defendants' plan worked. After having structuring numerous successful bids for Prime Tech, Taslidzic did the same thing through his own company Titans. And even while discounting his rates to be even more competitive, Plaintiffs lost bids at an alarming rate.

6. Eventually, Plaintiff learned that certain customers and vendors in the industry had essentially black-listed him, for fear of associating with a known criminal – per Defendants representations – or fear of being dragged into litigation.

7. Plaintiffs bring this action to clear their names, restore their business reputations, end Defendants' unfair competition, and recover damages caused by Defendants' unlawful conduct.

## PARTIES

8. Plaintiff Denis Taslidzic ("Taslidzic") is an individual who resides in Palm Beach County, Florida.

9. Plaintiff Titans Protective Coatings, LLC ("Titans"), is a Florida limited liability company maintaining a principal place of business at 150 Evernia Street, Suite B, Jupiter, Florida 33458.

10.     Defendant Peter Luther ("Luther") is an individual who resides in Palm Beach County, Florida.

11.     Defendant Prime Tech Coatings, Inc. ("Prime Tech"), is a for-profit corporation organized and existing under the laws of the State of Florida and maintaining a principal place of business at 1135 53rd Ct. N., West Palm Beach, Florida 33407.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

13.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  Plaintiffs' state law claims are so closely related to Plaintiffs' claims under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

14.     This Court has personal jurisdiction over Defendant Prime Tech because it is a Florida Corporation with a principal place of business in Palm Beach County, Florida and continuously conducts business in Palm Beach County, Florida.

15.     This Court has personal jurisdiction over Defendant Luther because he is a resident of Palm Beach County, Florida.

16.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the Defendants are subject to personal jurisdiction in this District and because the acts complained of giving rise to the claims herein occurred in this District.

## GENERAL ALLEGATIONS

### INDUSTRY BACKGROUND

17. Titans and Prime Tech are competitors in the industrial coating services industry.

18. Industrial coating companies typically provide services that include industrial painting on location or within a facility, wet and dry sandblasting, ceramic and powder coatings, waterproofing, and cement repair services.

19. The primary customers are general contractors. General contractors hire subcontractors like Titans and Prime Tech to perform coating work on various projects.

20. In connection with these projects, general contractors request bids. The general contractors then award the project based on numerous factors including pricing, the subcontractor's experience and quality of work, and prior experience with the subcontractor.

21. In order to work these projects, companies like Titans and Prime Tech acquire the necessary materials (e.g., paints, coatings, sealants, etc.) from the same network of vendors. These vendors are located throughout the United States.

### TASLIDZIC'S HISTORY IN THE INDUSTRY

22. Taslidzic has worked in the industrial coating services industry for over 12 years. Through his experience, he has developed a reputation with many general contractors that trust his work product and bid pricing. He has also developed relationships with certain vendors and receives favorable pricing as a result.

23. Taslidzic has built a commercial and business reputation of honesty, transparency, reliability, and fairness.

24. A core part of the business is bidding, because that is how companies win projects. Bidding is part art and part science.

4

25. For more than six years, Taslidzic worked at another company in the industry called Southland Painting Corporation ("Southland"). At Southland, Taslidzic was employed as an estimator and project manager. A central part of his job at Southland was to structure bids on projects that required industrial coating services.

26. Over the years, Taslidzic developed his own method of pricing bids that allowed him to submit competitive bids while maintaining strong margins.

27. In September 2013, after repeated efforts, Luther recruited Taslidzic to come work at Prime Tech as an estimator and project manager.

28. Taslidzic brought his relationships, reputation, industry knowledge and competitive bidding experience and methodology to Prime Tech.

29. Prior to employing Taslidzic, Prime Tech's services consisted primarily of shop work, where industrial coating services are provided within Prime Tech's facility. Prime Tech rarely bid on projects requiring field work, where industrial coating services are provided at the job site.

30. Taslidzic expanded Prime Tech's services to include field work and significantly increased Prime Tech's bid-win rate and revenue.

31. As an employee of Prime Tech, Taslidzic was never subject to any employment agreement, confidentiality agreement, non-disclosure agreement, non-solicitation agreement, or non-compete agreement.

**TASLIDZIC'S DEPARTURE FROM PRIME TECH**

32. On January 4, 2015, Taslidzic advised Luther that he intended to resign in one month to start his own company, Titans. Luther was not happy with this revelation and feared that Taslidzic's departure would lead to a drastic loss of revenue.

33. One of Luther's main concerns: Bidding. When Taslidzic joined the company, he helped Prime Tech enter new markets and compete for bigger work. Taslidzic had handled substantially all of the bids on major projects. Luther simply did not know how to structure bids and had no interest in learning how do so until Taslidzic announced his resignation.

34. As it turned out, in spite of Taslidzic giving a month's notice, he did not last another week. Luther demanded that, prior to Taslidzic's departure, Taslidzic train him how to competitively structure bids and provide him a blueprint for bidding. Luther demanded that Taslidzic share all of his relevant knowledge.

35. Taslidzic declined to do so because he was leaving the company and would soon be competing against Prime Tech for the same customers.

36. Luther was outraged and immediately began threatening to sue Taslidzic and destroy his reputation in the industry.

37. On January 7, 2016, Taslidzic officially resigned from Prime Tech and began operating Titans. Titans provides a variety of industrial coating services, sandblasting, concrete repair and restoration, and waterproofing.

38. Following Taslidzic's departure from Prime Tech, Luther embarked on a campaign to destroy Plaintiffs' business reputations. Luther targeted his efforts at general contractors that are the primary customers and the lifeblood of both Titans' and Prime Tech's businesses, general contractors that Taslidzic had introduced to Prime Tech, and vendors that both companies use.

39. Luther, individually and as an agent of Prime Tech, made written and oral false and misleading representations of fact regarding Plaintiffs' commercial activities and reputations. Specifically, Luther told multiple general contractors and vendors that Plaintiffs had

stolen Prime Tech's proprietary information and trade secrets, were using stolen Prime Tech information to bid on projects, stole Prime Tech's clients and had engaged in criminal conduct.

40. Luther further represented to customers and vendors throughout the industry that they would face potential liability and risk involvement in a major lawsuit if they conducted any business with Taslidzic or Titans.

41. Luther's remarks were made to prevent vendors, current customers, and prospective customers from doing business with Taslidzic and Titans and further intended to give Prime Tech an unfair advantage in the market.

42. Luther's remarks were sufficiently disseminated to general contractors and vendors within the industrial coating services industry so as to constitute advertising or promotion to the relevant purchasers within the industrial coating services industry.

43. Luther's false and misleading representations of fact were made in interstate commerce and have an effect on interstate commerce.

44. Luther's false and misleading representations have damaged Titans' ability to generate business.

45. For example, in early 2016, Luther falsely represented to Tnemec Company ("Tnemec") that Taslidzic and Titans illegally converted Prime Tech's customers and stole Prime Tech's trade secrets and that Tnemec should cease doing business with Taslidzic and Titans or risk involvement in a major lawsuit.

46. Tnemec is a vendor headquartered in Kansas City, Missouri. Tnemec services the United States and Canada and sells paints and coating products utilized in many of Titans' service contracts.

47.     When Taslidzic sought to purchase painting supplies from his contact at Tnemec, the Tnemec representative expressed shock that Taslidzic was not in jail based on Luther's accusations.

48.     In early March 2016, Luther misrepresented to Almar-Jackson Pools, Inc. ("Almar"), that Titans and Tasldizic had stolen Prime Tech's trade secrets and were illegally converting Prime Tech's current and prospective customers. Due to Luther's misrepresentations, Almar has not accepted any of Titans' bids.

49.     On approximately March 6, 2016, after launching his campaign to destroy Plaintiffs' reputations, Luther emailed Taslidzic demanding that he immediately agree not to solicit any Prime Tech customers, not to solicit any Prime Tech employees, not to compete with Prime Tech in the entire State of Florida for five years, cooperate in helping Prime Tech secure pending business and accept various other terms or "face litigation for willful violation with punitive damages." When Taslidzic would not cede to his demands, Luther continued his smear campaign.

50.     On March 9, 2016, Luther emailed a general contractor, Valley Crest, and falsely represented that Taslidzic was stealing Prime Tech's clients.  Luther also misleadingly suggested that Titans and Taslidzic were being investigated for their conduct and asked Valley Crest to forward any emails from Taslidzic regarding Titans.

51.     Also at approximately this same time, Luther falsely misrepresented to Rybovich Boat Company, LLC ("Rybovich") that Taslidzic and Titans were illegally converting Prime Tech's customers and utilizing stolen trade secrets. Prior to Luther's misrepresentations, Taslidzic had successfully bid on several projects with Rybovich. After Luther's

misrepresentations, Rybovich has not accepted any of Titans' bids, despite Taslidzic lowering his bid prices.

52. In approximately June 2016, Titans successfully bid on a project for an international energy company called Vecenergy. When Prime Tech and Luther learned of Titans' involvement with the project, Luther falsely represented to Vecenergy that Taslidzic and Titans illegally converted Prime Tech's customers, stole Prime Tech's trade secrets and had unlawfully used that information to formulate its bid on the project. Luther falsely represented that if Vecenergy continued to work with Titans and Taslidzic, they, too, would be liable for conspiracy, theft of trade secrets, and other claims.

53. As a result of the situation, Vecenergy threatened to disqualify both Titans and Prime Tech from making any bids on future projects.

54. Faced with the threat of disqualification from future bids, Luther and Taslidzic met to discuss their differences. Luther agreed that he would not interfere with Titans' work on the Vecenergy project provided that Titans did not solicit any of Prime Tech's employees to work on the project. Titans agreed. In this fashion, Luther and Prime Tech leveraged their false representations in the market place to extract various concessions from Titans.

55. On June 14, 2016, Luther emailed Vecenergy and falsely represented that Taslidzic and Titans unlawfully solicited Prime Tech's employee, Placid Edole ("Edole"), to work on the project.

56. In reality, Edole was a former Southland employee that followed Taslidzic to Prime Tech. In or about May 2016, Edole resigned from Prime Tech and asked Taslidzic for a job at Titans.

9

57. Defendants' have engaged in numerous other instances of false advertising, disparaging remarks, and unfair competition and disseminated false, slanderous, deceptive and misleading statements to customers and vendors throughout the market.

58. Luther's false and misleading statements have directly hindered Plaintiffs' ability to generate business. Taslidzic's bidding methodology has not changed since his departure from Prime Tech and yet, Taslidzic's bid success rate has declined significantly. In fact, Taslidzic has lowered his overall bid pricing across the board but Luther's smear campaign has tarnished his reputation and prevented him from winning projects.

**COUNT I**
**FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)**
(on behalf of Titans)

59. Titans repeats and realleges Paragraphs 1 - 58 as if fully set forth herein.

60. Titans and Prime Tech compete in the industrial coating services industry.

61. Titans has a commercial interest in its commercial and business reputation.

62. Titans has established a business reputation of honesty, transparency, reliability, and good moral character in its competitive bidding activities and performance of industrial coating services with its customers, prospective customers, and vendors. Due to its reputation, general contractors trust Titans' work-product and bid pricing.

63. Defendants have knowingly made false, misleading, and defamatory statements in commercial advertising and promotions that misrepresent and disparage the nature, characteristics, and qualities of Titans' commercial activities, services, and reputation.

64. Defendants falsely and misleadingly represented to Titans' customers, prospective customers, and vendors that Titans illegally stole Prime Tech's clients and utilized trade secrets stolen from Prime Tech in commerce to submit competitive bids on projects. Defendants further

10

falsely and misleadingly represented to Titans' customers, prospective customers, and vendors that if they worked with or continued to work with Titans, they would risk involvement in a major lawsuit.

65. Defendants have made such false and misleading representations verbally and in writing; in both cases, the representations were made directly to Titans' customers, prospective customers, and vendors.

66. Defendants' statements were sufficiently disseminated to general contractors and vendors within the industrial coating services industry so as to constitute advertising.

67. Defendants' false and misleading representations have misled, confused, and deceived customers, prospective customers, and vendors as to Titans' commercial reputation. Further, these misrepresentations have the capacity to continue misleading, confusing, and deceiving Titans' customers, prospective customers, and vendors.

68. The false and misleading representations had a material effect on Titans' customers', prospective customers', and vendors' decisions to do business with Titans because, to wit: No general contractor or vendor would do business with Titans if they believed that Titans was engaging in unlawful activities, utilizing stolen information, and that a relationship with Titans could result in involvement in a major lawsuit.

69. Defendants have made these false and misleading representations in interstate commerce and these false and misleading representations affect interstate commerce.

70. Defendants are directing their false advertisements and disparaging misrepresentations to customers, prospective customers, and vendors in the industrial coating industry in order to manipulate them into doing business with Defendants and ceasing all business with Titans.

71. Titans' injuries fall within the zone of interest protected by the Lanham Act because Defendants' false advertising and disparaging misrepresentations have caused Titans to suffer a loss of goodwill, a loss of sales, and damage to its commercial and business reputation.

72. The damage to Titans' economic and reputational injuries were directly caused by Defendants' false and misleading representations.

73. As a result of Defendants' false and misleading representations, Titans has been damaged in an amount to be determined at trial.

**COUNT II**
**UNFAIR COMPETITION UNDER FLORIDA LAW**
(on behalf of Titans)

74. Titans repeats and realleges the allegations contained in paragraphs 1 - 58 as if fully set forth herein.

75. Defendants, as a market competitor of Titans, engaged in deceptive conduct by disseminating false and misleading representations that Titans illegally stole Prime Tech's clients and was utilizing in commerce proprietary information stolen from Prime Tech to submit competitive bids on projects. Defendants falsely and misleadingly represented to Titans' customers, prospective customers, and vendors that if they worked with or continued to work with Titans, they would risk involvement in a major lawsuit.

76. Defendants' conduct caused consumer confusion because it had a material effect on Titans' customers', prospective customers', and vendors' decisions to purchase services from Titans or do business with Titans.

77. As a result of Defendants' unfair competition, Titans has been damaged in an amount to be determined at trial.

**COUNT III**
**DEFAMATION *PER SE***
(on behalf of Titans and Taslidzic)

78. Plaintiffs repeat and reallege the allegations contained in paragraph 1 - 58 as if fully set forth herein.

79. Luther, acting individually and as an agent of Prime Tech, published false statements in writing and orally to multiple customers, prospective customers, and vendors that (1) Plaintiffs illegally converted Defendants' customers and prospective customers, (2) Plaintiffs misappropriated Defendants' proprietary information and trade secrets, and (3) continued work with Plaintiffs would risk involvement in a major lawsuit.

80. Defendants' libelous writings and slanderous statements are defamation *per se* because, when considered alone, they tend to subject Plaintiffs to distrust, ridicule, contempt, and disgrace, and are injurious to Plaintiffs' trade and professional reputations.

81. Defendants knew or should have known that the statements about Plaintiffs would cause severe damage to Plaintiffs' reputations, business opportunities, social relationships, Taslidzic's career, and Titans' business.

82. The false and defamatory statements were made by Defendants with actual malice because they either knew of their falsity or made the statements with reckless disregard of their truth or falsity.

83. In making the defamatory statements, Defendants acted intentionally, maliciously, willfully, and with the intent to injure Plaintiffs.

84. Plaintiffs have been harmed by the loss of the economic value in goodwill and Taslidzic's reputation that he had built over his many years in the industrial coating industry.

13

85.     Defendants' conduct was unreasonable and outrageous and exceeds the bounds tolerated by decent society and was done willfully, maliciously, and deliberately to cause Taslidzic severe mental and emotional pain, distress, anguish, and loss of enjoyment of life, so as to also justify the award of punitive and exemplary damages.

86.     As a result of Defendants' defamatory statements, Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

(1) Damages to the fullest extent permitted by law under the Lanham Act;

(2) Corrective advertising under the Lanham Act in which Defendants must communicate to Titans' customers and vendors that Plaintiffs did not illegally convert Defendants' customers and prospective customers, did not misappropriate Defendants' proprietary information and trade secrets, and that continued work with Titans – in and of itself - will not subject those customers to liability;

(3) Damages to the fullest extent permitted by law for Defendants' unfair competition and defamation;

(4) Punitive damages based on the willful, wanton, and intentional nature of Defendants' conduct and defamation *per se*;

(5) Pre-judgment and post-judgment interest;

(6) An award of attorneys' fees and costs of the action; and

(7) Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all claims.

14

Dated: January 12, 2018

Respectfully submitted,

By: s/ *David Yaffe*
David J. Yaffe
Florida Bar No.: 125488
dyaffe@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

Alexander Gil
Florida Bar No.: 111507
agil@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiffs Denis Taslidzic and Titans Protective Coatings, LLC*